

Lenahan & Dempsey, P.C.
By: John R. Lenahan, Jr., Esquire
I.D. No. 22690
Timothy G. Lenahan, Esquire
I.D. No. 33939
Christine S. Lezinski, Esquire
I.D. No. 69546
Lenahan & Dempsey Professional Building
116 North Washington Avenue, Suite 400
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
E-mail: tgl@lenahandempsey.com

Attorneys for Plaintiffs

| | |
|---|---|
| ROSEMARY SEARLS AND ROBERT SEARLS, HER HUSBAND | IN THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY |
| Plaintiffs | |
| v. | CIVIL ACTION – LAW |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY One State Farm Plaza Bloomington, IL 61710 | JURY TRIAL DEMANDED |
| Defendant | NO. 17 CV 5679 |

## NOTICE

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Lackawanna Bar Association
338 N. Washington Ave., 3rd Floor
Scranton, PA  18503
(570) 969-9161

North Penn Legal Services
33 North Main Street, Suite 200
Pittston, PA  18640
(570) 299-4100

North Penn Legal Services
507 Linden Street, Suite 300
Scranton, PA  18503-1631
(570) 342-0184

Lenahan & Dempsey, P.C.

By _____
John E. Lenahan, Jr., Esquire

_____
Timothy G. Lenahan, Esquire

_____
Christine S. Lezinski, Esquire

Attorneys for Plaintiffs

Lenahan & Dempsey, P.C.
By: John R. Lenahan, Jr., Esquire
I.D. No. 22690
Timothy G. Lenahan, Esquire
I.D. No. 33939
Christine S. Lezinski, Esquire
I.D. No. 69546
Lenahan & Dempsey Professional Building
116 North Washington Avenue, Suite 400
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
E-mail: tgl@lenahandempsey.com

Attorneys for Plaintiffs

ROSEMARY SEARLS AND ROBERT SEARLS, :    IN THE COURT OF COMMON PLEAS
HER HUSBAND                           :        OF LACKAWANNA COUNTY
   319 W. Pine Street
   Shamokin, PA

           Plaintiffs             :           CIVIL ACTION – LAW

    v.                             :

                            :       JURY TRIAL DEMANDED
STATE FARM MUTUAL AUTOMOBILE   :
INSURANCE COMPANY             :
   One State Farm Plaza
   Bloomington, IL 61710          :      NO.

         Defendant          :

## COMPLAINT

COME NOW, Plaintiffs, Rosemary Searls and Robert Searls, her husband, by and through their attorneys, Lenahan & Dempsey, P.C., by John R. Lenahan, Jr., Esq., Timothy G. Lenahan, Esq. and Christine S. Lezinski, Esq. and hereby file the following Complaint against Defendant, State Farm Mutual Automobile Insurance Company, and aver as follows:

## THE PARTIES

1.    Plaintiff, Rosemary Searls, is an adult individual currently residing at 319 W. Pine Street, Shamokin, PA 17872-5743.

2.    Plaintiff, Robert Searls, is an adult individual currently residing at 319 W. Pine Street, Shamokin, Pennsylvania, 17872-5743.

3.     At all times material hereto, Plaintiffs, Rosemary Searls and Robert Searls, were residing together as husband and wife at 319 W. Pine Street, Shamokin, Pennsylvania 17872-5743.

4.     Defendant, State Farm Mutual Automobile Insurance Company ("Defendant" or "Defendant State Farm") is a corporation organized and existing under the laws of Delaware, which at all times material hereto maintained a principal place of business at One State Farm Plaza, Bloomington, Illinois, 61710. At all times material hereto, Defendant State Farm did business and regularly conducts business in Pennsylvania, including Lackawanna County.

### THE INSURANCE POLICY

5.     Plaintiffs incorporate all of the averments of this Complaint by reference as if fully set forth herein at length.

6.     Plaintiffs, Rosemary Searls and Robert Searls, were the named insureds on a policy of automobile insurance issued and/or underwritten by Defendants, State Farm Mutual Automobile Insurance Company ("State Farm"), Policy Number 630 1975-A13-38M effective 07/13/16 to 07/13/17 (hereinafter "the Policy"), which was in full force and effect at the time of the July 22, 2016 crash discussed further below.  A certified copy of the policy as provided by Defendants is attached as Exhibit A.

7.     At all times material hereto, Plaintiff, Rosemary Searls, was an "insured" under the Policy, including, but not limited to, on July 22, 2016, the date of the crash.

8.     The Policy provided for, inter alia, full tort coverage in exchange for the insurance premiums they paid.

9.     The Policy had liability limits of $50,000.00 per person/$100,000.00 each occurrence, and insured one vehicle.

10.     The Policy also provided for underinsured motorist (hereinafter "UIM") benefits in the amount of $50,000.00 per person/$100,000.00 per accident.

11.     The Policy also provided for medical expense benefits of $10,000.00; and income loss benefits of $1,000.00 per month, $5,000.00 maximum,

12.     Plaintiffs were insured with Defendant State Farm for 25 years and all premiums due and associated with the Policy were paid.

13.     Defendant State Farm is identified on documents related to the Policy, specifically on the policy of insurance itself.

14.     Defendant State Farm is identified on documents related to the below-referenced claims made on the Policy.

15.     Defendant State Farm supervised, directed and controlled the activities with respect to the handling of Plaintiffs' claims.

16.     Defendant State Farm formulated formal and informal, written and oral guidelines and policies for handling, adjusting, and paying claims, including medical, wage loss and UIM claims.

17.     Defendant State Farm employed the individuals handling and adjusting Plaintiff, Rosemary Searls', medical, wage loss and UIM claims.

18.     Defendant State Farm was and/or acted as Plaintiff's insurer at all times relevant to Plaintiff, Rosemary Searls' medical, wage loss and UIM claims.

19.     Defendant State Farm is an insurance company licensed to do business within the Commonwealth of Pennsylvania and, did in fact, conduct business activities, to wit:  selling policies, adjusting claims, accepting premiums and conducting other insurance activities in Lackawanna County.

20.     At all times material hereto, Defendant State Farm acted by and through its agents, ostensible agents, attorneys, servants and employees, including defense counsel, acting in the course and scope of their agency and/or employment, for whose conduct Defendant State Farm is liable, vicariously or otherwise.

## THE JULY 22, 2016 CRASH

21.    Plaintiffs herein incorporate by reference all of the averments of this Complaint as if the same were set forth at length.

22.    On July 22, 2016, at approximately 8:54 a.m., Plaintiff, Rosemary Searls, (hereinafter "Plaintiff") was in her 2007 Suzuki SX4, had safely brought her vehicle to a complete stop on SR 54, westbound, in Ralpho Township, Northumberland County, Pennsylvania, while waiting for a van in front of her to turn left into a private driveway, when the 2005 Chevrolet Equinox operated by Carol Bielski (hereinafter "the Tortfeasor"), forcefully and violently rear-ended her. As a result of said collision, Plaintiff, Rosemary Searls, sustained serious personal injuries which are more fully set forth hereafter.

23.    While at the scene, Plaintiff, Rosemary Searls, complained of back pain to the responding police officer, as confirmed in the Police Report.

24.    The aforementioned crash and resulting injuries, damages and losses to the Plaintiff, Rosemary Searls, were caused solely and exclusively by the negligence, carelessness and recklessness of the Tortfeasor including:

(a)    Failed to keep a proper and adequate lookout;

(b)    Failed to maintain proper control of her vehicle;

(c)    Failed to stop within the assured clear distance ahead;

(d)    Operated her motor vehicle with no warning of approach or intended direction;

(e)    Operated her motor vehicle in such a negligent and careless manner and with such disregard to the rights and safety of Plaintiff thus endangering the life and limb of the Plaintiff;

(f)    Operated her motor vehicle without regard for the distance of other cars lawfully ahead and upon the roadway;

4

(g)    Failed to properly take observation of the situation then and there existing to avoid striking the vehicles in front of her;

(h)    Failed to sound any warning or take other affirmative measures to make her presence known;

(i)    Failed to stop the vehicle she was operating to avoid the collision in question;

(j)    Failed to take evasive action to avoid the collision;

(k)    Failed to properly apply her brakes or take other affirmative measures in a timely manner to prevent striking the Plaintiff's vehicle;

(l)    Failed to exercise due care and caution under the circumstances then and there existing in the operation of her motor vehicle;

(m)    Failed to yield the right-of-way to the vehicle then operated by Plaintiff;

(n)    Failed to abide by the traffic laws of the Commonwealth of Pennsylvania;

(o)    Operated her vehicle in such a manner as to violate the statutes of the Commonwealth of Pennsylvania;

(p)    Failed to maintain the proper distance between vehicles thus violating the statutes of the Commonwealth of Pennsylvania and any local ordinances pertaining to and regarding the safe operation of a motor vehicle on public roadways including, but not limited to 75 P.A. C.S.A. §3361; and

(q)    Operated her vehicle in such a manner as to violate the statutes of the Commonwealth of Pennsylvania and any local ordinances pertaining to and regarding the safe operation of a motor vehicle on public roadways including, but not limited to 75 P.A. C.S.A. §3361.

25.    The Tortfeasor was 100% liable for the foregoing crash.

26.    Plaintiff, Rosemary Searls, was free of fault and bears no legal liability for the foregoing crash. No conduct or failure to act on her part in any way caused or contributed to the crash.

27.    As a direct and proximate result of the aforementioned negligence, carelessness and recklessness of the Tortfeasor which caused the aforementioned crash, Plaintiff, Rosemary Searls, sustained severe and permanent injuries including but not limited to:

a)    anterolisthesis of L-4 on L-5 and L-5 on S-1;

b)    spondylolisthesis lumbar region including L3-4 and L4-5;

c)    neurogenic claudication;

d)    spondylosis at multiple levels of her lumbar spine;

e)    low back pain;

f)    sciatica;

g)    lumbar radiculopathy;

h)    bilateral extremity numbness;

i)    lower extremity pain;

j)    lumbar discogenic changes;

k)    right and left lumbago;

l)    sacroiliitis;

m)    radiating pain in her left and right leg;

n)    bilateral upper thigh pain;

o)    paresthesia/burning in her leg(s)/thigh(s);

p)    exacerbation and/or aggravation of otherwise asymptomatic, quiescent conditions;

q)    headaches;

r)    nausea;

s)    sprain/pain in neck/shoulders/upper extremities;

t)    difficulty walking;

u)    difficulty sleeping;

v)    fear of driving;

w)    agoraphobia;

x)    any and all medical conditions which are described in the medical records and/or which may develop in the future as a result of the rear-end crash of July 22, 2016.

28.    As a direct and proximate result of the aforementioned negligence, carelessness and recklessness of the Tortfeasor which caused the aforementioned crash and Plaintiff's aforementioned injuries, Plaintiff, Rosemary Searls, was required to undergo medical treatment and testing including, but not limited to:

a.    x-rays;

b.    diagnostic studies;

c.    physical therapy;

d.    pain management;

e.    injection therapy, including sacroiliac joint injections and lumbar facet injections;

f.    MRI's;

g.    EMG testing;

h.    use of pain and other prescription medication;

i.    L4-L5 decompression, instrumented internal fixation and fusion, specifically, a L4 Gill-type laminectomy; L5 laminectomy; L4-5 bilateral titanium pedicle screw instrumented internal fixation; and L4-L5 bilateral posterolateral intertransverse process athrodesis fusion with combination of morcellized local autograft bone and bone extender substance; and

j.    all other treatment and therapies listed in Plaintiff's medical records. Plaintiff will be required to undergo additional medical treatment and testing into the future.

29.    As a direct and proximate result of the aforementioned negligence, carelessness and recklessness of the Tortfeasor which caused the aforementioned crash and Plaintiff's

7

aforementioned injuries, Plaintiff, Rosemary Searls, has incurred, and in the future will incur additional expenses for medical treatment and testing and the costs of said medical treatment and testing which exceed the amount of benefits due to Plaintiff, Rosemary Searls, pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law and Plaintiff, Rosemary Searls, hereby makes a claim for the costs of said medical treatment and testing.

30.     Because Plaintiff's health insurance at the time of the crash was a Health Maintenance Organization ("HMO"), all of the bills incurred by Plaintiff, Rosemary Searls, for her medical treatment once her $10,000.00 in first party medical benefits were exhausted, are fully admissible, because 75 Pa.C.S.A. §1722 does not apply to HMO's pursuant to the Pennsylvania Supreme Court decision in Wirth v. Aetna U.S. Healthcare, 904 A.2d 858, 865-866 (Pa. 2006).

31.     To date, Plaintiff has incurred approximately $45,000.00 in admissible medical bills, including $3,990.01 that Rosemary Searls had to pay out of her own pocket for her deductible/co-insurance payment for her lumbar surgery at Geisinger Medical Center, along with her co-pays/deductibles to her various medical providers and physical therapy.

32.     As a direct and proximate result of the aforementioned negligence, carelessness and recklessness of the Tortfeasor which caused the aforementioned crash and Plaintiff's aforementioned injuries, Plaintiff, Rosemary Searls, was rendered sick, sore, lame and disabled and has suffered a loss of life's pleasures and will continue to suffer same into the future.

33.     As a direct and proximate result of the aforementioned negligence, carelessness and recklessness of the Tortfeasor which caused the aforementioned crash and Plaintiff's aforementioned injuries, Plaintiff, Rosemary Searls, has suffered physical pain, mental anguish, humiliation, emotional distress, discomfort, inconvenience, the loss of ability to perform activities of daily living and the loss of the ability to enjoy the pleasures of life, and may in the future continue to suffer the same.

34.     As a direct and proximate result of the aforementioned negligence, carelessness and recklessness of the Tortfeasor which caused the aforementioned crash and the Plaintiff's aforementioned injuries, Plaintiff, Rosemary Searls, has sustained and will continue to sustain a loss of earnings, a loss of earning capacity and a shortening of work life expectancy.

35.     As a direct and proximate result of the aforementioned negligence, carelessness and recklessness of the Tortfeasor which caused the aforementioned crash and the Plaintiff, Rosemary Searls, aforementioned injuries,  Plaintiff Robert Searls, as the husband of Rosemary Searls, has been deprived of the care, society, companionship, aide, assistance, comfort, contribution, services, and consortium of his wife,  Rosemary Searls, all of which have been to his great detriment and emotional loss beginning on July 22, 2016 and continuing into the future.

36.     At the time of the crash, the Tortfeasor was insured by Meridian Security Insurance Company/State Auto Insurance, with liability limits of $100,000.00 per person.

37.     On September 11, 2017, the Tortfeasor's insurance carrier offered its full $100,000.00 liability limits to settle the claims by Plaintiffs.

38.     Defendant State Farm provided consent to settle and waiver of subrogation on September 13, 2017, thus entitling State Farm to a credit for the Tortfeasor's $100,000.00 liability limits.

<u>FIRST PARTY BENEFITS COVERAGE</u>

39.     Plaintiffs herein incorporate by reference all of the averments of this Complaint as if the same were set forth at length.

40.     Plaintiffs paid all premiums due and associated with the aforementioned policy of insurance,

41.     Plaintiffs purchased automobile insurance with a first party medical and income loss benefits, to gain peace of mind that their medical expenses and income losses would be paid in the event they were injured in a crash.

42.     Pursuant to the aforementioned insurance contract, Defendant State Farm represented and agreed to pay income loss benefits of $1,000.00 per month, up to the applicable policy limits of five thousand dollars ($5,000.00) for wage losses in the event of a crash.

43.     It is believed and averred that Defendant State Farm never intended to fully provide the promised first party benefits under the aforementioned policy of insurance to Plaintiffs.

44.     Prior to the July 22, 2016 crash, Plaintiff, Rosemary Searls, had worked for 43 years at M & T Bank as a teller, where she was working full time, 37.5 hours per week, at the time of the crash.

45.     On July 25, 2016, Defendant State Farm, through its agent, servant, ostensible agent and/or employee, Seap Men, forwarded correspondence to Plaintiff, Rosemary Searls, advising her that they "have been informed you were injured in this loss." In that letter, Defendant State Farm advised Plaintiff, Rosemary Searls, that she had medical coverage under the Policy in the amount of $10,000.00 and requested she sign and return Medical Authorizations to obtain her medical records. However, Defendant State Farm failed to advise Plaintiff, Rosemary Searls, of the availability and/or amount of the income loss and/or underinsured motorist benefits available under the Policy which were pertinent to her claim.

46.     As a direct result of her injuries in the July 22, 2016 crash, Plaintiff, Rosemary Searls, was forced to miss time from work from her position as a teller at M & T Bank.

47.     Plaintiff, Rosemary Searls, notified Defendant State Farm that she was unable to work as a result of the July 22, 2016 crash, and made a claim to Defendant, State Farm, for first party income loss benefits.

48.     By cover letter dated September 27, 2016, Defendant, State Farm, through its "claims specialist", Zach Raynsford, notified Plaintiff that she was not eligible to collect first party income loss benefits because "your wage loss coverage does not cover the first 5 days missed" and therefore they were unable to compensate her for her time lost from 7/22/16-7/25/16. In said letter, Defendant

State Farm failed to advise Plaintiff of the availability or amount of income loss benefits for future time missed from work and/or her entitlement to underinsured motorist benefits.

49.    As a direct result of her crash-related injuries, Plaintiff missed several additional weeks from work from September through the end of October 2016.

50.    At the time Plaintiff made her original inquiries with Defendant State Farm as to the availability of benefits including wage loss, Defendant State Farm created the false impression that because she was receiving a salary continuation through sick pay and/or short term disability benefits that there would be no claim for wage loss now or ever and never advised Plaintiff as to further availability of wage loss benefits should she miss additional time from work as a result of the July 22, 2016 crash.

51.    Although she attempted to return to work, as of January 31, 2017, Plaintiff, Rosemary Searls, was forced to retire from her position as a teller at M & T Bank as a direct result of the injuries suffered in the July 22, 2016 crash. A copy of her letter of resignation confirming the same is attached as Exhibit B.

52.    But for the July 22, 2016 crash, Plaintiff, Rosemary Searls, would not have retired early from her position at M & T Bank, and would have continued to receive wages from that employment into the future, such that she suffered an actual loss of gross income she would have performed except for the bodily injury.

53.    As of 2016, Plaintiff, Rosemary Searls, was earning $15.95 per hour in her position as a teller with M & T Bank, 37.5 hours per week, or $598.13 per week/$2,392.52 per month, or over $31,000.00 per year.

54.    At the time of her forced retirement from M & T Bank on November 11, 2016, Plaintiff, Rosemary Searls, then age 60, was still not eligible for social security benefits, and did not become eligible for social security benefits until she turned age 62 on December 27, 2017.

55.     Based upon the foregoing, Plaintiff, Rosemary Searls, is entitled to the $1,000 per month income loss benefits, for a total of $5,000.00 in income loss benefits, under the Policy providing first party income loss benefits with Defendant State Farm.

56.     To date, Defendant has failed to pay any first party income loss benefits to Plaintiff, Rosemary Searls, and failed to perform any investigation, let alone a reasonable one, as to the income loss benefits.

57.     From the onset of this claim, Defendant State Farm has had a mindset of denial and was seeking any basis whatsoever to deny paying the full amount of Plaintiff's benefits for which Plaintiff had paid significant premiums.

58.     Defendant State Farm has refused to pay first party income loss benefits pursuant to the terms and conditions of the policy of insurance and the Pennsylvania Motor Vehicle Financial Responsibility Law.

59.     Contrary to the terms of the automobile insurance policy issued by Defendant State Farm to Plaintiff and in violation of the law, statutes, and regulations of the Commonwealth of Pennsylvania, Defendant State Farm:

    a.    Failed to pay Plaintiff's medical benefits when due contrary to Policy and the Motor Vehicle Financial Responsibility Law and regulations;

    b.    Failed to promptly pay Plaintiff's first party benefits contrary to the Policy and the Motor Vehicle Financial Responsibility Law and regulations;

    c.    Failed to timely and thoroughly investigate the processing and payment of Plaintiff's first party benefits;

    d.    Made a frivolous and/or unfounded refusal to pay Plaintiff's medical bills;

    e.    Failed to comply with the terms of the automobile insurance policy that Defendant State Farm issued to Plaintiffs with regard to payment of first party benefits;

    f.    Unnecessarily and unreasonably compelled Plaintiff to hire counsel to represent her for her first party claims;

    g.    Unnecessarily and unreasonably compelled Plaintiff to file suit with regard to payment of her first party claims;

h.   Placed its financial above the interests of its insured;

i.   Breached its implied duty of good faith and fair dealing;

j.   Committed violations of the statutes, regulations and law of the Commonwealth of Pennsylvania with such frequency so as to indicate a business practice, contrary to 40 P.S. §1171.5;

k.   Failed to adopt and implement reasonable standards for the prompt investigation of Plaintiff's first party benefits claim, contrary to 40 P.S. §1171.5;

l.   Refused and/or improperly delayed payment of Plaintiff's income loss benefits without conducting a reasonable investigation, contrary to 40 P.S. §1171.5;

m.   Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which the company's liability has become reasonably clear;

n.   Compelled Plaintiff to institute litigation to recover amounts due under the policy, in violation of 40 P.S. 1171.5;

o.   Failed to promptly provide Plaintiff with a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for their denial of and/or delayed payment of Plaintiff's first party benefits claim, contrary to 40 P.S. §1171.5;

p.   Failed to promptly settle claims where liability had become reasonably clear under one portion of an insurance policy in order to influence settlements under another portion of the policy, in violation of 40 P.S. 1171.5;

q.   Failing to fully disclose to Plaintiffs pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented and/or which are pertinent to a claim, in violation of 31 Pa. Code 146.4;

s.   Failed to acknowledge and act promptly upon written or oral communications with respect to claims arising under its policy, in violation of 40 P.S. 1171.5 and 31 Pa.Code 146.5(a) and (c);

t.   Failing to honor first party claims on the basis that responsibility for payment should be assumed by others, in violation of 31 Pa.Code 146.7(d);

u.   Misled Plaintiff as to the insurance coverage (medical benefits) available and owed to her under the aforementioned automobile insurance policy;

v.   Failed to timely, objectively and fairly evaluate Plaintiff's first party benefit claims;

w.   Failed to give equal consideration to paying Plaintiff's first party benefits as to the consideration given to not paying said benefits;

x.   Made intentional and/or negligent misrepresentations concerning Plaintiff's entitlement and/or non-entitlement to first party benefits and the reasons for denying payment of Plaintiff's first party benefits;

13

y.    Represented that the Plaintiff purchased $5,000.00 in income loss benefits, when in fact, said promise was, in part, illusory;

z.    Charged a premium based upon $5,000.00 in income loss benefits, when, in fact, Defendant State Farm would use any excuse or rationale, justified or not, to avoid fulfilling the contract with the Plaintiff;

aa.   Represented that Plaintiff had $5,000.00 in first party income loss benefits, when in fact, Defendant State Farm, without justification, refused to pay said benefits;

bb.   Represented that goods or services have sponsorship, approval, characteristics, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that they do not have in violation of 73 P.S. 201 et seq;

cc.   Represented that goods or services are of a particular standard, quality or grade when they are of another, in violation of 73 P.S. 201 et seq.

dd.   Advertised goods or services with intent not to sell them as advertised in violation of 73 P.S. 201 et seq;

ee.   Failed to comply with the terms of a written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services in violation of 73 P.S. 201 et seq; and

ff.   Engaged in fraudulent or deceptive conduct, which created likelihood of confusion or of misunderstanding in violation of 73 P.S. 201 et seq.

60.   Defendant State Farm knowingly, willfully, wantonly, unreasonably and/or recklessly refused and failed to comply and/or violated not only the terms and conditions of the automobile insurance policy issued to Plaintiff, including, but not limited to the policy's implied covenants of good faith and fair dealing, but also the duties imposed upon Defendant State Farm by virtue of the statutes of the Commonwealth of Pennsylvania including, but not limited to, 42 Pa. C.S.A. §8371; the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171, et seq; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, et seq; 75 Pa.C.S. §1716; and the regulations of the insurance department of the Commonwealth of Pennsylvania; and/or otherwise violated the fiduciary, contractual and statutory duties that Defendant State Farm is required to comply with under Pennsylvania common law in dealing with Plaintiffs.

61.    In violation of the policy and the laws of the Commonwealth of Pennsylvania, Defendant State Farm without legal justification, unreasonably and unfairly denied and/or delayed payment of first party policy benefits otherwise justly due and owing.

62.    As a result of Defendant State Farm's conduct, Plaintiffs have sustained damages including unpaid wage losses and associated lost interest on said sums, all of which Plaintiffs are entitled to recover.

63.    As a result of the conduct described above, Plaintiffs have also unnecessarily incurred legal fees, costs and lost interest otherwise available together with related economic loss, financial hardship, physical discomfort, emotional discomfort, embarrassment and humiliation, as well as the time, expense, aggravation and distress of litigation and out-of-pocket damages associated with Defendant State Farm's delay and/or refusal to pay first party benefits caused by Defendant State Farm's unwarranted, unreasonable and bad faith delay and/or denial.

64.    The foregoing conduct by Defendant State Farm evidences a reckless disregard to the rights of Plaintiffs herein.

65.    Plaintiffs have fully complied with all of the terms and conditions of the subject policy of insurance and all conditions precedent and subsequent to the Plaintiffs' right to recover under the policy have been performed or have occurred, yet Defendant State Farm has refused, without legal justification or cause, and continue to refuse and/or delay the payment of first party benefits due and owing to Plaintiff, as a result of the July 22, 2016 accident.

<u>UNDERINSURED MOTORISTS COVERAGE</u>

66.    Plaintiffs herein incorporate by reference all of the averments of this Complaint as if the same were set forth at length.

67.    Plaintiffs purchased automobile insurance through Defendant State Farm with a UIM benefits in the amount of $50,000.00, to gain peace of mind that they would be compensated, without delay, for their losses and damages in the event of a crash with an underinsured driver.

68.   Prior to the filing of the instant litigation, Defendant State Farm was acutely aware that, *inter alia*:

(a) liability for the crash was crystal clear and rested entirely with the Tortfeasor/Underinsured Vehicle, as evidenced by the police report in State Farm's possession;

(b) Plaintiff, Rosemary Searls ("Plaintiff")'s vehicle was rear-ended;

(c) Plaintiff complained of back pain to the police officer at the scene of the crash, as confirmed by the police report in State Farm's possession;

(d) Plaintiff's husband took her from the scene of the crash to the Geisinger Emergency Room, where she again complained of low back pain, as confirmed by the Geisinger Hospital Records in State Farm's possession;

(e) Plaintiff's medical records in State Farm's possession established that Plaintiff had intractable low back pain ever since the crash, including radicular symptoms, which caused shooting pains and other times numbness down her legs and hips, as well as neck pain, headaches and sleep disturbance;

(f) Plaintiff had tried all manner of conservative treatment modalities for her low back and lower extremity radicular pain, including prescription medications, diagnostic studies, rest, heat application, physical therapy, doctor visits, and multiple pain killing injections, none of which provided any relief;

(g) When those treatments did not provide relief, Plaintiff underwent a lumbar fusion surgical procedure in May 2017, which including wiring and a cage to stabilize her lower back, which records were contained in State Farm's own first party file (which Plaintiffs' counsel had expressly provided permission to State Farm to review as part of the UIM claim);

(h) Plaintiff's treating physician, Dr. Chakrabarty, verified in a written report provided to Defendant State Farm in June 2017 that he had treated Mrs. Searls for the past 15 years and that she never had any back problems prior to the July 22, 2016 crash, which was confirmed by Dr. Chakrabarty's records for the prior five (5) years provided to State Farm at its request;

(i) Rosemary Searls swore under oath in an affidavit provided to State Farm that she was forcibly rear-ended on July 22, 2016 by Carol Bielski; she reported her back injury to the investigating police officer; "[p]rior to the July 22, 2016 collision I had no problems with my back and I have never had any medical treatment or attention for it," as confirmed in the June 13, 2017 report of her treating doctor, Dr. Charkrabarty; and "I have been asked to produce any medical records for five years before the collision. In that time frame, the only doctor I have seen is Dr. Chakrabarty. Her records confirm that I had no prior complaints of back problems in the relevant years before the collision."

(j) Plaintiff's treating physician, Dr. Chakrabarty, verified in a written report provided to State Farm on June 14, 2017, that Plaintiff's back injuries and subsequent lumbar fusion/stabilization surgery on May 3, 2017 were causally related to the July 22, 2016 crash;

(k) Plaintiff's medical records following the crash – including the medical records contained in State Farm's own first party file (which Plaintiffs' counsel had expressly provided permission to State Farm to review as part of the UIM claim) – all consistently confirmed that Plaintiff's problems with her back began with the July 22, 2016 crash, leading to her May 3, 2017 spinal fusion/stabilization surgery;

(l) Prior to the July 22, 2016 crash, Plaintiff was working, without restrictions, in her position as a teller for M & T Bank, which she had held for 43 years prior to the crash;

(m) Plaintiff's first party medical coverage of $10,000.00 was exhausted as of June 2017;

17

(n) Plaintiff had admissible medical expenses exceeding $45,000.00 as a result of the crash;

(o) In addition to the substantial economic damages, Plaintiff was also entitled to be compensated for ongoing, substantial non-economic losses, including pain and suffering and loss of enjoyment of life, including the ability to perform pre-accident recreational and household activities;

(p) the value of Plaintiffs' claim exceeded all available coverage under the Tortfeasor's policy ($100,000.00), and the UIM policy limits under the State Farm Policy ($50,000.00); and

(q) Plaintiffs provided all information requested by Defendant State Farm during the pendency of the UIM claim, such that Defendant State Farm has all information necessary to fully, fairly, honestly and promptly evaluate Plaintiffs' claim.

69.    On or about May 26, 2017, Plaintiffs' counsel placed Defendant State Farm on notice that he represented her with regard to serious injuries she suffered in the July 22, 2016 crash.

70.    By letter dated June 8, 2017, Plaintiff's counsel notified Defendant State Farm, by and through its agent, servant and employee, Chiff Chiari, of the circumstances of the July 22, 2016 crash and the Plaintiff's injuries, including that:

a) Plaintiff was stopped in traffic when she was forcibly rear-ended by the Tortfeasor, and enclosed a copy of the police report;

b) Plaintiff had multiple injuries in the crash, the worst to her low back;

c) Plaintiff had to undergo a lumbar fusion surgical procedure recently at Geisinger Medical Center by a neurosurgeon, who fused Mrs. Searls' lumbar spine and stabilized it with hardware;

d) Plaintiff was presently engaged in a lengthy course of physical therapy;

e) The Tortfeasor's Coverage with State Auto was only $100,000.00;

18

f) Plaintiff's injuries had a value "far, far in excess of the primary coverage" such that there was an underinsured claim under the Policy; and

g) Plaintiff was a full tort claimant.

71.   In the June 8, 2017 letter, and before any request was ever made by State Farm, Plaintiffs' counsel advised Defendant State Farm that it had permission to review Plaintiff's first party file.

72.   In the June 8, 2017 letter, Plaintiffs' counsel advised he would be seeking payment of the $50,000.00 UIM coverage limits.

73.   By letter dated June 9, 2017, Defendant State Farm, by and through its agent, servant and employee, Lisa Harvie, acknowledged the receipt of the June 8, 2017 letter "presenting an uninsured/underinsured motorist claim under our named insured's policy;" requested proof of the liability limits of all tortfeasors and proof that the applicable limits have been offered; and requested "medical bills and reports."

74.   In the June 9, 2017 letter, Defendant State Farm did not request Plaintiff sign any authorizations for State Farm to obtain medical and/or wage loss records.

75.   By letter dated June 14, 2017, Plaintiffs' counsel advised Defendant State Farm, by and through its agent, servant and employee, Cliff Chiari, that:

a) as stated in his June 8, 2017 letter, Plaintiff's injuries had a value far, far in excess of the Tortfeasor's coverage;

b) on June 8, 2017 he had provided Defendant State Farm with permission to review Plaintiff's first party file and was certain that State Farm would have done so by now;

c) Plaintiff's principal treating doctor, Dr. Alakanda Chakrabarty, authored a written report dated June 13, 2017, a copy of which was provided to State Farm, confirming that he had treated Plaintiff for 15 years prior to the July 22, 2016 crash and she never had any back issues and was never treated by any other physician for back pain; that her back

problems started after the July 22, 2016 crash; that she was treated by pain clinic at Geisinger first with no improvement, after which she had back surgery on May 3, 2017; and that "All of Rosemary's back problems and the surgery she had on her low back are directly and causally related to the injuries she sustained in the 7/22/16 MVA;" and

    d)   he had asked State Auto to confirm, in writing, its coverage and make a tender of its limits.

76.   In his June 14, 2014 letter, Plaintiffs' counsel requested that State Farm tender its UIM limits of $50,000.00, noting that the updated report from Dr. Chakrabarty provided more than adequate information to warrant a tender of those limits.

77.   By letter dated June 14, 2017, Defendant State Farm, by and through its agent, servant and employee, Cliff Chiari, notified Plaintiffs that her first party medical coverage ($10,000.00) under the Policy was exhausted.

78.   By correspondence dated June 15, 2017, Defendant State Farm, by and through its agent, servant and employee, Lisa Harvie, acknowledged Plaintiffs' June 14, 2017 demand letter but stated "we are currently in the process of evaluating your demand. Once our evaluation is complete, we will contact you to discuss settlement or request additional information."

79.   In the June 15, 2017 letter, Defendant State Farm did not request Plaintiff, Rosemary Searls, sign any authorizations to obtain her medical and/or employment records.

80.   By letter dated June 19, 2017, Plaintiffs' counsel advised Defendant, State Farm, through its agent, servant and employee, Lisa Harvie, that:

    a)   Plaintiff, Rosemary Searls, was stopped in traffic when she was forcibly rear-ended by the Tortfeasor;

    b)   Mrs. Searls had multiple injuries from the crash, with the worst being her low back;

c) On May 3, 2017, Mrs. Searls was hospitalized at Geisinger Medical Center and underwent a lumbar fusion surgical procedure wherein a team of neurosurgeons fused her low back and stabilized it with hardware;

d) Mrs. Sears was presently engaged in a lengthy course of physical therapy;

e) the Tortfeasor, insured with State Auto, only had $100,000.00 in liability coverage;

f) Mrs. Searls' injuries had a value far, far in excess of the primary coverage;

g) Mrs. Searls was a full tort claimant;

h) Mrs. Searls' treating physician, Dr. Chakrabarty, authored a written report dated June 13, 2017, a copy of which was again provided to State Farm; Dr. Chakrabarty confirmed that he had treated Plaintiff for 15 years prior to the July 22, 2016 crash and she never had any back issues and was never treated by any other physician for back pain; that her back problems started after the July 22, 2016 crash and she was treated by pain clinic at Geisinger first with no improvement, after which she was referred for spine surgery and had back surgery on May 3, 2017; and that "All of Rosemary's back problems and the surgery she had on her low back are directly and causally related to the injuries she sustained in the 7/22/16 MVA."

81. In the June 19, 2017 letter, Plaintiffs' counsel reiterated his demand for the $50,000.00 UIM limits, noting that the updated report of Dr. Chakrabarty provided more than adequate information to warrant that tender.

82. By letter dated June 22, 2017, Plaintiffs' counsel provided Defendant State Farm, by and through its agent, servant and employee, Lisa Harvie, a copy of the State Auto declaration sheet, confirming the $100,000.00 coverage applicable to the Tortfeasor, and advised that State Auto was preparing to tender its limits per his telephone conversation with them that day.

83. By letter dated June 26, 2017, Plaintiffs' counsel requested that Defendant State Farm provide a copy of the first party file.

84.     After receiving no response from Defendant State Farm as to his reiterated demand for the tender of the $50,000.00 UIM limits in his June 19, 2017 letter and/or the status of State Farm's so-called "evaluation," by letter dated July 17, 2017 to Defendant State Farm's agent, servant and employee, Lisa Harvie, Plaintiffs' counsel re-submitted copies of his June 8, 2017, June 14, 2017 and June 22, 2017 letters; reiterated the circumstances of the rear-end crash in which she was very, very badly hurt and underwent lumbar fusion/stabilization surgery; and reiterated his demand for the prompt tender of the $50,000.00 UIM limits.

85.     In the July 17, 2017 letter, Plaintiffs' counsel also provided Defendant State Farm with the Geisinger Medical Center History and Physical from April 2017; operative note from May 2017; and initial physical therapy evaluation/treatment note dated June 1, 2017, all of which confirm that Mrs. Searls' symptoms all began with the rear-end motor vehicle collision of July 22, 2016.

86.     Despite being provided on June 14, 2017 with the June 13, 2017 written report from Plaintiffs treating doctor, Dr. Chakrabarty that he had been treating Rosemary Searls for 15 years and she "never ever had any back issues;" "was never treated by any other physician for her back pain;" her back problems "started after the MVA on 7/22/2016" and "all of Rosemary's back problems and the surgery she had on her low back are directly and causally related to the injuries she sustained in the 7/22/16 MVA," and despite never requesting Plaintiff sign a single medical authorization, by letter dated July 21, 2017, Defendant State Farm, by and through its agent, servant and employee, Lisa Harvie, advised that it was unable to conclude Plaintiffs' claim because she was "reviewing your demand to determine what prior medical records are needed to evaluate Rosemary's injury."

87.     By letter dated July 27, 2017, Defendant State Farm, by and through its agent, servant and employee, Lisa Harvie, requested that Plaintiffs' counsel provide "5 years of prior medical and pharmacy records for Rosemary," as well as whether she would have an outstanding health insurance lien and that she "will pend my evaluation until the above is received." Once again,

22

Defendant State Farm never requested Plaintiff, Rosemary Searls, execute a medical authorization, but instead placed the onus of its investigation on Plaintiffs' counsel to gather records on its behalf.

88.     Defendant State Farm to this point did not do any investigation; did not request Plaintiff execute any medical or wage authorizations; did not request a recorded interview or statement under oath of Plaintiff, Rosemary Searls; and did not request any medical or vocational evaluations.

89.     Defendant State Farm's request for Plaintiff Rosemary Searls, medical records for the prior five (5) years was patently unreasonable and in reckless disregard of State Farm's lack of a reasonable basis to deny and/or delay Plaintiffs' UIM claim in light of the fact that as of June 14, 2017, State Farm was in possession of a written report of Plaintiff's treating physician, Dr. Charkrabarty, who confirmed that Plaintiff did not have any back pain or treatment with Dr. Chakrabarty or any other physician in the prior 15 years and and "all of Rosemary's back problems and the surgery she had on her low back are directly and causally related to the injuries she sustained in the 7/22/16 MVA."

90.     By letter dated August 3, 2017, Plaintiffs' counsel advised Defendant State Farm, by and through its agent, servant and employee, Lisa Harvie, that "As I told you on several occasions in the past, Mrs. Searls had no problems with her back before the crash. She had no medical treatment for her back before the July 22, 2016 crash." In response to State Farm's request that he produce medical records for five (5) years before the crash, Plaintiff's counsel provided:

a) Rosemary Searls' Sworn Affidavit indicating under oath that she was forcibly rear-ended on July 22, 2016 by Carol Bielski; she reported her back injury to the investigating police officer; "[p]rior to the July 22, 2016 collision I had no problems with my back and I have never had any medical treatment or attention for it," as confirmed in the June 13, 2017 report of her treating doctor, Dr. Charkrabarty; and "I have been asked to produce any medical records for five years before the collision. In that time

23

frame, the only doctor I have seen is Dr. Chakrabarty. Her records confirm that I had no prior complaints of back problems in the relevant years before the collision."

b) Dr. Chakrabarty's complete chart from 2011 through 2017, which confirmed that Mrs. Searls had no complaints of back pain or treatment for back problems before the July 22, 2017 crash.

91. In his August 3, 2017 letter, Plaintiffs' counsel further advised, "Now that State Farm has everything you could possibly require to evaluate the underinsured motorist (UIM) claim, kindly tender the modest policy limits of $50,000.00 at your first opportunity."

92. Despite having everything that Defendant State Farm requested to evaluate the claim, which included a sworn statement from the Plaintiff, Rosemary Searls, along with written confirmation from Plaintiff's own treating physician, Dr. Chakrabarty, that Plaintiff never had any back problems prior to the July 22, 2016 crash and that Plaintiff's back injuries, including the lumbar fusion/stabilization surgery, were directly attributable to the July 22, 2016 crash, Defendant, State Farm, embarked on a course of conduct as part of a corporate philosophy to "deny, delay and defend" first party and/or underinsured claims, regardless of whether they had a reasonable basis to do so, in order to avoid prompt, fair and honest adjustment of the UIM claim and, instead, to look for ways to invent and to create leverage to devalue an otherwise legitimate, indefensible UIM claim.

93. By letter dated August 25, 2017, Defendant, State Farm, by and through its agent, servant and employee, Lisa Harvie, advised that they were unable to conclude Plaintiff's claim because "we have sent the claim file to Summers McDonnell Hudock & Guthrie to assist in securing prior medical records and review for a possible IME for Rosemary," and that "[o]nce the necessary information is received, we will continue processing your client's claim."

94. Defendant, State Farm's referral of this matter to counsel to "assist in securing prior medical records and review for a possible IME for Rosemary" is patently unreasonable and in

reckless disregard of State Farm's lack of a reasonable basis to deny and/or delay Plaintiffs' UIM claim, in view of the fact that State Farm was already in possession of a sworn statement under oath of Plaintiff, Rosemary Searls, along with written confirmation from Plaintiff's own treating physician, Dr. Chakrabarty, that Plaintiff never had any back problems prior to the July 22, 2016 crash and Plaintiff's treating physician Dr. Chakrabarty confirmed that Plaintiff's back injuries, including the lumbar fusion/stabilization surgery, were directly attributable to the July 22, 2016 crash

95. By letter dated September 8, 2017, Plaintiffs' counsel provided Defendant State Farm, through its counsel Carrie McConnell, with a copy of correspondence from Socrates, on behalf of Plaintiff's health insurance plan, Geisinger, dated September 8, 2017, establishing that Geisinger, as a Health Maintenance Organization (HMO) was exempt from the anti-subrogation provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. pursuant to the Pennsylvania Supreme Court decision of Wirth v. Aetna, and that Geisinger had paid medical bills totalling $40,170.59 for which it was asserting a claim for subrogation/reimbursement.

96. As of September 8, 2017, Defendant State Farm was aware that Plaintiff's medical bills above and beyond the $10,000.00 in first party medical benefit coverage under the Policy were fully admissible and recoverable in the UIM claim, and that at that point admissible medical expenses exceeded $40,000.00.

97. On September 11, 2017, the Tortfeasor's carrier, State Auto, tendered the Tortfeasor's $100,000.00 liability limits "[b]ased on the extent of injury and overall value of medical expenses," thereby recognizing both the significance of Plaintiff, Rosemary Searl's injuries and the amount of admissible medical expenses.

98. By letter dated September 12, 2017, Plaintiffs' counsel forwarded to Defendant State Farm, by and through its counsel, Carrie McConnell, a copy of State Auto's letter tendering the $100,000.00 policy limits and requested Defendant State Farm's consent to settle.

99. In the September 12, 2017 letter, Plaintiffs' counsel further confirmed that:

a) on June 22, 2017, he had sent State Farm a copy of the State Auto dec sheet to verify its applicable policy limits of $100,000.00;

b) State Farm now knew of the tender of underlying coverage and had known for some time of the severity of injuries suffered by its UIM insured, Mrs. Searls, in the senseless motor vehicle crash of July 22, 2016;

c) Mrs. Searls had reported a back injury at the scene of the crash per the police report, and has had nothing but terrible back problems since July 22, 2016, culminating in the major lumbar fusion surgery at Geisinger Medical Center;

d) Mrs. Searls had exhausted her first party coverage and now has a huge lien to deal with, over $40,000.00;

e) Mrs. Searls' treating doctor confirmed in a June 13, 2017 report, sent to State Farm on June 19, 2017, as well as June 14, 2017, that the July 22, 2016 crash caused the injuries to Mrs. Searls' low back which lead to extensive treatment, medical care and ultimately surgery;

f) Mrs. Searls chart made it clear, in several places, that all of Mrs. Searls' lumbar problems developed as a consequence of the subject collision; and

g) Plaintiffs had produced an Affidavit from Mrs. Searls dated August 2, 2017 in which she indicated she had no pre-existing back problems.

100.   In the September 12, 2017 letter, Plaintiffs' counsel advised "With this mountain of evidence (factual/medical etc.) I am wondering why State Farm is not tendering its UIM limits which are only $50,000.00. This is obviously coverage Mrs. Searls purchased to protect herself in situations like this and the UIM limits, after all, are rather small."

101.   By letter dated September 13, 2017, State Farm, by and through its agent, servant and employee, Lisa Harvie, provided Plaintiffs with consent to settle with the Tortfeasor and accept the $100,000.00 liability limits.

102. By letter dated September 15, 2017, Defendant State Farm's counsel, Carrier L. McConnell, advised that she had receive the lien payout summary from the Geisinger Health Plan and forwarded the same to State Farm.

103. Subsequently, Plaintiffs' counsel advised Defendant State Farm's counsel, Carrier L. McConnell, that in addition to the $40,000.00 lien being asserted by Geisinger, Plaintiff, Rosemary Searls, had received a medical bill from Geisinger in the amount of $4,987.51, representing her deductible and co-insurance which Plaintiff, Rosemary Searls, was personally responsible to pay under her Geisinger health care plan (which Geisinger agreed to reduce to $3,990.01 if she paid it in a lump sum), bringing the total admissible medical special damages for past medical expenses to date to approximately $45,000.00.

104. By letter dated September 29, 2017, Defendant State Farm, through its counsel, Carrie McDonnell, for the first time requested that Plaintiff sign authorizations to obtain medical records, including the records of Dr. Chakrabarty, despite the fact that Defendant State Farm had previously requested that Plaintiffs' counsel obtain Dr. Chakrabarty's records for the prior five (5) years and those records were already provided to State Farm.

105. By letter dated October 6, 2017, Plaintiffs' counsel requested that Defendant State Farm, though its counsel, Carrie McConnell, provide a certified copy of the State Farm Policy.

106. By email dated October 9, 2017, Carrie McConnell advised that she had requested the certified copy of the Policy but it may take some time as it had to be requested from underwriting.

107. Despite having evidence in the form of a sworn affidavit from Plaintiff, Rosemary Searls that she never had any prior back problems or treatment for back problems; a written report from Plaintiffs' treating physician, Dr. Chakrabarty, who had treated Plaintiff for 15 years prior to the crash and confirmed that Plaintiff never had any prior back problems or prior medical treatment for back problems and that the May 2017 lumbar fusion/stabilization surgery was causally related to

27

the July 22, 2016 crash; and despite knowing that Plaintiff had admissible past medical bills in excess of $40,000.00 and that all future medical bills would be admissible, Defendant State Farm ignored such evidence and refused to make a settlement offer, even though it was undeniable that the value of Rosemary Searl's injuries far exceeded the $150,000.00 in available coverage ($100,000.00 Tortfeasor coverage and $50,000.00 UIM benefits under the State Farm Policy).

108. In a letter dated September 21, 2017, Defendant State Farm's counsel, Carrie McConnell, advised that State Farm had issued a letter to Plaintiffs' counsel giving consent to settle with State Auto in the amount of $100,000.00; that she had forwarded the correspondence regarding the lien from Geisinger Medical Center and unpaid medical bills to State Farm; and that she wanted to proceed with a Statement Under Oath of Mrs. Searls.

109. Any further investigation that Defendant State Farm would purport to undertake now with respect to Plaintiffs' underinsured claim, including obtaining medical records, a statement under oath and/or obtaining defense vocational/economic expert reports, are pretextual and merely an effort to justify its prior, arbitrary evaluations and thus any such investigation is not in good faith.

110. Defendant State Farm's suggestion that it needs a Statement Under Oath as part of its so-called "investigation" of Plaintiff's UIM claim or use the need for a Statement Under Oath as a basis to further delay Plaintiff's UIM claim is patently unreasonable and recklessly disregards State Farm's lack of a reasonable basis to deny and/or delay Plaintiffs' UIM claim, because Plaintiff, Rosemary Searls, has already sworn — under oath — that she had no prior back problems or medical treatment before the July 22, 2016 crash and that the only physician who treated her in the years prior to the crash was Dr. Chakrabady, who has already confirmed that she did not make any complaints of back pain or have any treatment by any physician for back pain in the 15 years before the crash.

111. There is no good faith basis to discount the medical evidence submitted by Plaintiffs and/or the medical report of Dr. Charkabady.

112.   No reasonable insurer, fairly and honestly evaluating this claim, would ever require a medical examination, and any future request by State Farm for a defense medical examination is nothing more than a pretext to justify State Farm's predetermined efforts to devalue this claim, because:

    a)    unlike any defense medical examiner State Farm may hire for an improper purpose, Plaintiff's treating physician, Dr. Chakrabady, who has had the benefit of first-hand, personal knowledge with multiple medical evaluations of Rosemary Searls across 15 years, has already confirmed in his written report that Mrs. Searls did not make any complaints of back pain or receive any treatment for back pain prior to the July 22, 2016 crash and that her back pain and lumbar fusion/stabilization surgery are causally related to the crash;

    b)    because Dr. Chakrabady was the only physician that Mrs. Searls treated with in the years leading up to the crash, and her medical records, already provided to State Farm, confirm that Plaintiff, Rosemary Searls, had no prior complaints or medical treatment of any kind for back pain prior to the crash, there would be no factual foundation for any defense medical examiner to opine that Mrs. Searls' back problems and July 22, 2016 fusion/stabilization surgery are causally related to a pre-existing condition;

    c)    any mention in post-crash medical records to degenerative findings related to her low back are of no relevance whatsoever as it relates to Plaintiff's UIM claim, as Plaintiff never complained of back problems and/or pain and did not receive any treatment for back problems or pain prior to the July 22, 2016 crash;

    d)    State Farm, and any defense medical examiner it may seek to retain, cannot ignore the well-established principle in Pennsylvania jurisprudence known as the "eggshell skull" doctrine and that aggravation of a pre-existing condition subjects a tortfeasor to

the same degree of liability as the infliction of an original wound. The tortfeasor must take his victim as he finds him.

113.   Thus, any purported defense by State Farm, even assuming a defense medical examination is performed, that Rosemary Searls' condition was based upon her pre-existing condition could not reasonably be relied upon by Defendant State Farm as a basis to not pay the UIM claim.

114.   Despite having clear evidence establishing that payment of the full $50,000.00 UIM limits was due and owing, Defendants engaged defense counsel to further "delay, defend and deny" Plaintiff's claim, acutely aware that not only was State Farm's unreasonable evaluation and refusal to make a settlement offer would force Plaintiffs to institute litigation, but it was actively daring Plaintiffs to do so, knowing it could fall back on its vastly superior economic power to fight an otherwise legitimate claim.

115.   The lack of any settlement offer made by Defendant State Farm with respect to the underinsured claim to date is based upon a completely arbitrary evaluation, without substantiation and bears no rational basis, forcing Plaintiffs to institute litigation to obtain amounts due and owing under the Policy.

116.   Defendant State Farm's entire mindset in the entire handling of Plaintiffs' UIM claim has been to put its interests ahead of its insureds' interest by arbitrarily discounting the claim without any competent evidence to do so.

117.   Defendant State Farm delayed payment of the Plaintiffs' claims, thereby allowing State Farm to enjoy the time value of said funds and despite the fact that State Farm knew, or should have known, that said benefits should have been paid.

118.   Defendant State Farm actively looked for ways to devalue the claim, without a reasonable basis, contrary to its duty to fairly and honestly evaluate the loss.

119.  Defendant State Farm's "investigation" tactics for Plaintiff's UIM claim included making serial requests for information which was irrelevant, unnecessary and/or had been previously supplied, and each time Plaintiffs' counsel supplied the information requested, State Farm made a request for additional information, which was likewise irrelevant, unnecessary and/or had been previously supplied, in order to delay the ultimate payment of Plaintiffs' UIM claim.

120.  It is believed and averred that further discovery may reveal that State Farm has implemented and/or followed an institutional and systemic policy and practice -- whether written or unwritten -- of "deny, delay and/or defend": a scheme to unlawfully denying claims and benefits owed to its insureds, delaying claims and payments for claims and/or defending claims through aggressive litigation tactics, designed to deny insureds fair and reasonable settlements and reduce payouts below fair value; allow State Farm to hold onto monies otherwise owed for as long as possible; increase State Farm's bottom line corporate profits; and/or discourage other insureds or their counsel from pursuing claims by forcing insureds to file suit and making it expensive and time-consuming for insureds to pursue their claims.

121.  State Farm's institutional practices are evident through their conduct and how claims representatives are taught to handle claims, by creating delay tactics and a series of unnecessary, irrelevant and/or duplicative requests for information and/or further investigation, designed to delay the ultimate payment of the claim and increase the time, expense and cost to its insureds.

122.  Upon information and belief, further discovery may reveal that State Farm has restructured its offices and created "teams" to save money, such that there are multiple offices handling the same file and claims representatives have too many claims files to appropriately address and properly evaluate all of them.

123.  Defendant State Farm has fiduciary, contractual, common law and/or statutory duties towards the Plaintiffs to handle their claims in good faith, fair dealing and with due care in order to arrive at a prompt, fair and equitable settlement of the claims.

124.   Defendant State Farm owed a non-delegable duty of good faith and fair dealing to Plaintiffs and held a fiduciary capacity to treat them fairly and honestly in all of their dealings with them.

125.   Defendant State Farm had the right to handle Plaintiffs' claims and control settlement.

126.   At all times material hereto, Defendant State Farm maliciously, intentionally and consistently put its interests and objectives over the interests of Plaintiffs, all to the Plaintiffs' great detriment and loss.

127.   Defendant State Farm violated its statutory, common law and/or contractual duty of good faith and fair dealing to pay Plaintiffs' claims as described above.

128.   Defendant State Farm was obliged to and had undertaken the responsibility for making a reasonable and fair evaluation of Plaintiffs' claims in good faith and fair dealing and breached this duty by failing to make a reasonable, timely and/or fair evaluation of Plaintiffs' claims.

129.   Defendant State Farm had a duty to give Plaintiffs' interests, at a bare minimum, the same faithful consideration that it gave its own interests.

130.   At all times material hereto, Defendant State Farm maliciously, intentionally and in bad faith, put its own interests far above the interests of Plaintiffs.

131.   Defendant State Farm focused upon its own economic considerations to limit or delay payment on Plaintiffs' claims causing damages to Plaintiffs, as discussed herein, *inter alia*, by delaying and failing to pay Plaintiffs' claims and by subjecting Plaintiffs to unnecessary expenses.

132.   In violation of the policy and the laws of the Commonwealth of Pennsylvania, Defendant State Farm, without legal justification, unreasonably and unfairly denied and/or delayed payment of benefits otherwise justly due and owing, allowing State Farm an "interest free loan" on benefits to which Plaintiffs were lawfully entitled.

133.   The conduct of Defendant State Farm includes, but is not limited to:

(a)   Failing to fully, fairly and adequately evaluate the Plaintiffs' claims;

32

(b)     Ignoring any advice and/or recommendations that did not fit State Farms' arbitrary, predetermined decision to devalue legitimate claims at any cost or what State Farm would pay for Plaintiffs' claims;

(c)     Failing to respond to Plaintiffs' repeated demands that State Farm tender the policy limits with respect to the Plaintiffs' claims;

(d)     Failing to conduct a full, fair, timely and proper investigation to become properly informed of the Plaintiffs' claims;

(e)     Failing to attempt in good faith to effectuate a fair and equitable settlement;

(f)     Breaching their duty to negotiate in good faith through motives of self-interest, Defendants' own economic considerations only, and ill-will towards Plaintiffs;

(g)     Not attempting in good faith to effectuate the prompt, fair and equitable settlement of Plaintiffs' claims where the Defendants' duty to do so is reasonably clear;

(h)     Failing to promptly, objectively and fairly evaluate the Plaintiffs' claims;

(i)     Dilatory and abusive claims handling;

(j)     Knowing and/or recklessly disregarding the lack of a reasonable basis in failing to pay the Plaintiffs' claims;

(k)     Failing to give equal consideration to paying the Plaintiffs' claims;

(l)     Failing to give equal consideration to paying the Plaintiffs' claims promptly as to not paying the claim promptly;

(m)     Failing to timely investigate, evaluate, and pay the Plaintiffs' claims;

(n)     Failing to provide any justification or basis for its failure to tender the full policy limits for Plaintiffs' claims;

(o)     Failing to promptly and/or properly advise Plaintiff of the acceptance or denials of the Plaintiffs' claims;

(p)     Conducting an unfair, unreasonable, and untimely investigation of Plaintiffs' claims;

(q)     Failing to follow their own guidelines and procedures and/or abandoning its written guidelines and procedures to avoid scrutiny and auditing in bad faith litigation;

(r)     Assuming a fiduciary obligation and then failing to carry out the same in good faith

(s)     Unreasonably and unfairly withholding policy benefits justly due and owing to the Plaintiffs;

(t)  Breaching the duties of good faith and fair dealing;

(u)  Placing their interests over the interest of their insureds;

(v)  Ignored the opinions of Plaintiff's treating physicians, regarding the causal relationship of Plaintiff's injuries to the July 22, 2016 crash and lack of pre-existing back issues or treatment;

(w)  Failing to honestly, fairly, intelligently and objectively evaluate the Defendants' exposure with respect to the Plaintiffs' claims;

(x)  Failing to accurately assess the strengths or weaknesses of the evidence as a whole;

(y)  Ignoring repeated demands for policy limits by Plaintiffs with respect to the Plaintiffs' claims;

(z)  Refusing to make reasonable (or any) settlement offers;

(aa)  Ignoring the clear liability and significant damages suffered by Plaintiffs;

(bb)  Unreasonably and vexatiously delaying payment of benefits for Plaintiffs' claims, when it was clear that immediate payment of benefits under the Policy was justified and warranted;

(cc)  Failing and/or refusing to pay the Plaintiffs' claims, without a reasonable foundation to do so;

(dd)  Failing to acknowledge or act promptly upon written communications with respect to the Plaintiffs' claims under the Policy;

(ee)  Failing to adopt and implement standards to promptly investigate and pay claims arising out of Plaintiffs' automobile insurance contract;

(ff)  Failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the Plaintiffs' claims;

(gg)  Failing to exercise the utmost good faith in discharging their statutory, common law and contractual duties to the Plaintiffs;

(hh)  Engaging in unfair claims settlement and insurance practices in violation of common law and/or Defendants' statutory obligations;

(ii)  Placing Plaintiffs in a position of extreme physical and emotional hardship;

(jj)  Obtaining an "interest free loan" by depriving Plaintiffs of benefits to which they were lawfully entitled;

(kk)  Failing to consider the range of awards/verdicts with respect to the Plaintiffs' claims;

(ll)  Purportedly disputing causation of Plaintiffs' injuries and damages in the UIM

34

aspect of the claim, despite previously acknowledging the causal relationship of those same injuries in the first party medical claim;

(mm)   Making, publishing, issuing or circulating statements which misrepresent the benefits, advantages, conditions or terms of an insurance policy in violation of 40 P.S. 1171.5(a);

(nn)   Making, publishing, issuing or circulating statements which contain representations or statements with respect to the business of insurance or State Farm's conduct in the insurance business which are untrue, deceptive or misleading in violation of 40 P.S. 1171.5(a);

(oo)   Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue in violation of 40 P.S. 1171.5(a)(10);

(pp)   Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies in violation of 40 P.S. 1171.5(a)(10) and 31 Pa. Code 146.5;

(qq)   Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies in violation of 40 P.S. 1171.5(a) (10);

(rr)   Refusing to pay claims without conducting a reasonable investigation based upon all available information in violation of 40 P.S. 1171.5(a)(10);

(ss)   Failing to affirm or deny coverage of claims within a reasonable time after the claim was submitted by Plaintiff and communicated to the company or its representative, in violation of 40 P.S. 1171.5(a)(10);

(tt)   Not attempting in good faith to effectuate a prompt, fair and equitable settlement of claims in which the company's liability under the policy has become reasonably clear in violation of 40 P.S. 1171.5(a)(10);

(uu)   Compelling Plaintiffs to institute litigation to recover amounts due under an insurance policy in violation of 40 P.S. 1171.5(a)(10);

(vv)   Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application in violation of 40 P.S. 1171.5(a)(10);

(ww)   Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy in order to influence settlements under other portions of the insurance policy or under other policies of insurance in violation of 40 P.S. 1171.5(a)(10);

(xx)   Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement in violation of 40 P.S. 1171.5(a)(10);

(yy)   Failing to maintain a full, complete and accurate claim file as required by Pennsylvania law, specifically, 31 Pa. Code 146.3;

(zz)   Failing to fully disclose to Plaintiffs pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented and/or which are pertinent to a claim, in violation of 31 Pa. Code 146.4;

(aaa)  Failing to timely complete its investigation and keep Plaintiffs apprised of the status of its investigation, in violation of 31 Pa. Code 146.6 and 146.7;

(bbb)  Failing to complete its investigation in 30 days in violation of 31 Pa. Code 146.6;

(ccc)  Failing to comply with the standards for prompt, fair and equitable settlements in violation of 31 Pa. Code 146.7;

(ddd)  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services in violation of 73 P.S. 201 et seq;

(eee)  Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another in violation of 73 P.S. 201 et seq;

(fff)   Representing that goods or services have sponsorship, approval, characteristics, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that they do not have in violation of 73 P.S. 201 et seq;

(ggg)  Failing to comply with the terms of a written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services in violation of 73 P.S. 201 et seq; and

(hhh)  Engaging in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding in violation of 73 P.S. 201 et seq.

134.  As a result of Defendant State Farm's conduct, Plaintiffs have sustained damages including underinsured benefits and associated lost interest on said sums, all of which Plaintiffs are entitled to recover.

135.  As a result of the conduct described above, Plaintiffs have also unnecessarily incurred legal fees, costs and lost interest otherwise available, together with related economic loss, physical discomfort, emotional distress and humiliation, as well as the time, expense, aggravation and distress of litigation and out-of-pocket damages associated with Defendant State Farm's delay

and/or refusal to pay benefits and denial and/or delay in the processing and payment of Plaintiffs' claims, caused by Defendant State Farm's unwarranted, unreasonable and bad faith delay.

136.   The conduct of Defendant State Farm was wanton, reckless, malicious and in bad faith.

137.   The foregoing conduct by Defendant State Farm evidences a reckless disregard to the rights of Plaintiffs herein.

138.   Plaintiffs have fully complied with all of the terms and conditions of the subject policy of insurance and all conditions precedent and subsequent to the Plaintiffs' right to recover under the policy have been performed or have occurred, yet Defendant State Farm has refused, without legal justification or cause, and continues to refuse and/or delay the payment of benefits due and owing to Plaintiffs as a result of the July 22, 2016 crash.

COUNT I

BREACH OF CONTRACT – FIRST PARTY WAGE LOSS BENEFITS

PLAINTIFF ROSEMARY SEARLS

VS.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

139.   Plaintiffs incorporate all of the averments of this Complaint by reference as if fully set forth herein.

140.   Pursuant to the terms of the Policy, Defendant State Farm was obliged to provide first party income loss benefits of $1,000.00 per month, up to $5,000.00.

141.   Pursuant to the terms of the foregoing automobile insurance policy, Defendant State Farm was obliged to provide first party benefits to Plaintiff in accordance with the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §1701, et seq.

142.   Defendant State Farm has failed to pay Plaintiff any amount in first party income loss benefits under the Policy.

143.  Defendant State Farm's failure to pay first party wage benefits constitutes a material breach of contract.

144.  As an expressed or implied term within this agreement, Defendant State Farm was required to exercise the utmost good faith and fair dealing in their handling of Plaintiffs' claims under this insurance contract.

145.  Defendant State Farm, in the performance of said contract, owed Plaintiffs a fiduciary duty to act in good faith and to use due care in the processing of Plaintiffs' claim.

146.  Defendant State Farm did not use or exercise good faith, fair dealing or due care with regard to Plaintiff's claim.

147.  Defendant State Farm failed to properly or fairly evaluate Plaintiffs' claims in breach of the foregoing contract.

148.  By failing to pay the Plaintiffs' claims as described above in a timely manner and denying the Plaintiffs' claims, Defendant State Farm breached its contractual obligations to Plaintiffs under the policy.

149.  As a result, the Plaintiffs have been required to retain the services of an attorney to collect benefits due and owing.

150.  The failure of Defendant State Farm to abide by their contract caused Plaintiffs to incur expenses, suffer unnecessary delay and hardship, and otherwise sustain damages as further outlined herein that would have been avoided if Defendant State Farm had properly and reasonably honored and complied with their statutory and contractual obligations.

151.  Defendant State Farm's failure to exercise good faith and fair dealing with regard to this matter constituted a material breach of contract.

152.  The foregoing conduct by Defendant State Farm constitutes a breach of the contract of insurance with the Plaintiffs by failing to honor the applicable coverage under the policy as

required under Pennsylvania statutes and applicable case law and denying Plaintiffs' claims submitted under the policy, as described at length above.

153. The foregoing conduct by Defendant State Farm also constitutes a breach of the policy's implied covenant of good faith and fair dealing.

154. Plaintiffs have satisfied all of their obligations under this policy, including but not limited to all conditions precedent and all conditions subsequent required in the process of his first party benefit claim involving income loss coverage.

155. By their actions described herein, Defendant State Farm has undertaken a course of action which has been designed to unilaterally and without justification delay and refuse income loss benefits so as to force Plaintiffs in a position of extreme financial hardship, in contradiction of the terms of the insurance contract, the Pennsylvania Motor Vehicle Financial Responsibility Law and the case law of the Commonwealth of Pennsylvania.

156. The breach of contract by Defendant State Farm was of such a kind that serious emotional disturbance was a particularly likely result.

157. As a result of the Defendant State Farm's breach of their duty under the foregoing automobile insurance policy and Pennsylvania law, Plaintiff has suffered actual and consequential damages.

158. Defendant State Farm's material breach of contract resulted in consequential damages to Plaintiff, Rosemary Searls, including the time, expense, aggravation and distress of litigation, attorneys' fees, costs, unnecessary delay and hardship, lost interest in proceeds and other damages caused by Defendant State Farm's unwarranted, unreasonable and/or bad faith delay and caused Plaintiffs to otherwise sustain damages as further outlined herein that would have been avoided if Defendant State Farm had properly and reasonably honored and complied with its contractual and/or statutory obligations.

WHEREFORE, Plaintiff, Rosemary Searls, respectfully requests this Honorable Court to enter judgment in her favor against Defendant, State Farm Mutual Automobile Insurance Company, for damages in excess of $50,000.00 together with interest, costs, and such other relief as is deemed necessary and proper.

COUNT II

BREACH OF CONTRACT – UIM BENEFITS

PLAINTIFF ROSEMARY SEARLS

VS

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

159.   Plaintiffs hereby incorporate by reference all of the paragraphs of this Complaint as if same were set forth at length herein.

160.   Pursuant to the terms of the foregoing automobile insurance policy, Defendant State Farm was obliged to provide UIM benefits with respect to the July 22, 2016 crash.

161.   The UIM limits under the Policy are $50,000.00 per person.

162.   As described above, Plaintiffs' counsel made repeated demands for payment of the UIM policy limits with respect to Plaintiffs' claims as a result of the July 22, 2016 crash.

163.   Defendant State Farm's failure to pay UIM benefits as a result of Plaintiffs' claims constitutes a material breach of contract.

164.   As an expressed or implied term within this agreement, Defendant State Farm was required to exercise the utmost good faith and fair dealing in its handling of Plaintiffs' claim under this insurance contract.

165.   In the performance of said contract, Defendant State Farm owed Plaintiffs a fiduciary duty to act in good faith and to use due care in the processing of Plaintiffs' claim.

166.   Defendant State Farm did not use or exercise good faith, fair dealing or due care with regard to Plaintiffs' claim.

40

167.   Defendant State Farm failed to properly or fairly evaluate Plaintiffs' claim in breach of the foregoing contract.

168.   The foregoing conduct by Defendant State Farm constitutes a material breach of the contract of insurance with Plaintiffs by failing to honor the applicable coverage under the policy as required under Pennsylvania statutes and applicable case law and denying and/or delaying Plaintiffs' claim submitted under the policy, as described at length above.

169.   The foregoing conduct by Defendant State Farm also constitutes a breach of the policy's implied covenant of good faith and fair dealing and a material breach of contract.

170.   The breach of contract by Defendant State Farm was of such a kind that serious emotional disturbance was a particularly likely result.

171.   As a result of Defendant State Farm's material breach of its duties under the foregoing automobile insurance policy and Pennsylvania law described above, Plaintiffs have suffered actual and consequential damages.

172.   Defendant State Farm's material breach of contract resulted in consequential damages to Plaintiffs, including the time, expense, aggravation and distress of litigation, attorney fees, costs, unnecessary delay and hardship, lost interest in proceeds and other damages caused by Defendant State Farm's unwarranted, unreasonable and/or bad faith delay and otherwise sustained damages as further outlined herein that would have been avoided if Defendant State Farm had properly and reasonably honored and complied with its contractual and/or statutory obligations.

WHEREFORE, Plaintiff, Rosemary Searls, respectfully requests this Honorable Court to enter judgment in her favor against Defendant, State Farm Mutual Automobile Insurance Company for damages in excess of $50,000.00 together with interest, costs, and such other relief as is deemed necessary and proper.

<u>COUNT III</u>

<u>BREACH OF CONTRACT – UIM BENEFITS – LOSS OF CONSORTIUM</u>

<u>PLAINTIFF ROBERT SEARLS</u>

<u>VS.</u>

<u>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY</u>

173.   All of the paragraphs of this Complaint are incorporated herein by reference as if fully set forth at length.

174.   As a direct and proximate result of the aforementioned negligence of the Tortfeasor which caused the aforementioned crash and Plaintiff Rosemary Searls' multiple injuries, Plaintiff Robert Searls has been deprived of the society, care, aid, comfort, convenience, services, contribution, companionship, society and consortium of his wife, Plaintiff Rosemary Searls, all to his great financial loss and detriment.

175.   Plaintiff, Robert Searls, hereby makes claim for all damages available to him pursuant to the aforementioned contract issued by the Defendant State Farm for loss of consortium damages.

176.   Defendant State Farm's failure to pay the UIM benefits under the policy constitutes a breach of contract.

177.   Defendant State Farm's failure to exercise good faith and fair dealing with regard to Plaintiff, Robert Searls' loss of consortium claims as described above constituted a breach of the policy's implied covenant of good faith and fair dealing and a material breach of contract.

178.   As a result of the Defendant State Farm's breach of its duties under the foregoing automobile insurance policy and Pennsylvania law described above, Plaintiff, Robert Searls, has suffered actual and consequential damages.

179.   Defendant State Farm's material breach of contract resulted in Plaintiff, Robert Searls' consequential damages, including emotional distress, the time, expense, aggravation and distress

of litigation, attorneys' fees, costs, unnecessary delay and hardship as well as lost interest in proceeds caused by Defendant's unwarranted, unreasonable and/or bad faith delay and caused Plaintiff, Robert Searls, to otherwise sustain damages as further outlined herein that would have been avoided if Defendant had properly and reasonably honored and complied with its contractual and/or statutory obligations.

WHEREFORE, Plaintiff, Robert Searls, respectfully requests this Honorable Court to enter judgment against the Defendant, State Farm Mutual Automobile Insurance Company, in excess of $50,000.00, together with interest, costs and such other relief this court deems just and appropriate.

COUNT IV

BAD FAITH - 42 Pa. C.S.A. §8371

PLAINTIFFS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

180.   Plaintiffs hereby incorporate by reference all of the paragraphs of this Complaint as if same were set forth at length herein.

181.   On or about February 7, 1990, the Governor of Pennsylvania signed into law 42 P.S. §8371, effective July 1, 1990, entitled "Actions on Insurance Policies" which provides a private cause of action for bad faith against insurance companies as follows:

> In an action arising under an insurance policy, if the Court finds that an insurer has acted in bad faith toward the insured, the Court may take all the following actions:
>
> 1.   Award interest on the amount of the claims when the basic claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
>
> 2.   Award punitive damages against the insurer;
>
> 3.   Assess costs and attorney fees against the insurer.

182.   By virtue of the foregoing conduct, outlined at length above, Defendant State Farm knew or should have known it lacked reasonable basis to fail to pay Plaintiffs' benefits as a result of

43

the claim by Plaintiffs and persisted in a course of conduct designed to deny and/or delay Plaintiffs' entitlement to said benefits. As a result of Defendant State Farm's bad faith conduct and actions, Plaintiffs are entitled to recover interest on unpaid and/or delayed benefits; punitive damages against Defendant State Farm; and reasonable counsel fees and costs incurred by Plaintiffs in prosecuting this action.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor against Defendant State Farm Mutual Automobile Insurance Company for damages in excess of $50,000.00 together with interest, costs, attorney fees, punitive damages and such other relief as is deemed necessary and proper.

## COUNT V
## VICARIOUS LIABILITY

### PLAINTIFFS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

183.  Plaintiff incorporates each and every allegation of this Complaint as if same were set forth at length herein.

184.  At all times mentioned herein, Defendant State Farm acted by and through its actual or apparent authorized agents, attorneys, servants, workmen, employees and/or ostensible agents, including insurance agents, adjusters, and supervisors, including defense counsel. Defendant State Farm is therefore vicariously liable for the negligence, carelessness, recklessness and/or intentional conduct of these agents, attorneys, servants, workmen, employees and/or ostensible agents who, at all times, were furthering the interest of Defendant State Farm and were acting within the scope of their actual employment/agency or ostensible agency with Defendant State Farm.

185.  Alternatively, at all times relevant herein, Defendant State Farm authorized, acquiesced and otherwise ratified the conduct and activities of its agents, attorneys, employees, servants and/or ostensible agents including insurance adjusters and supervisors and defense counsel in that they never sought to change, alter or amend their handling of the claims.

44

Accordingly, Defendant State Farm did therefore accept and retain the benefits of the wrongful and tortious conduct and acts of its agents. Defendant State Farm is, therefore, vicariously liable for said conduct.

186. As a consequence of the foregoing, Plaintiffs were caused to sustain damages as more fully described herein above.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor against Defendant, State Farm Mutual Automobile Insurance Company, for damages in excess of $50,000.00 together with interest, costs, attorneys' fees, punitive damages and such other relief as is deemed necessary and proper.

Respectfully submitted,

LENAHAN & DEMPSEY, P.C.

By _____
John R. Lenahan, Jr., Esquire

_____
Timothy G. Lenahan, Esquire

_____
Christine S. Lezinski, Esquire

Attorneys for Plaintiffs

## VERIFICATION

We, Rosemary Searls and Robert Searls, hereby verify that the foregoing Complaint is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit; that the language of the Complaint is that of counsel and not of signer; that the Complaint, subject to inadvertent or undiscovered errors, is based upon and therefore limited by the records and information still in existence, presently recollected and thus far discovered in the preparation of this Complaint and the defense of this case; to the extent that the contents of the pleadings are that of counsel, the undersigned have relied upon counsel in making this verification; that subject to the limitations set forth herein, the averments of the Complaint are true and correct to the best of our knowledge, information and belief.   We understand that false statements herein are made subject to the penalties of 18 Pa. C.S.; Section 4904, relating to unsworn falsification to authorities.

_Rosemary Searls_
Rosemary Searls

_Robert Searls_
Robert Searls

Dated:  _10/26/17_